Jacob Chen, Esq.
DGW Kramer LLP
45 Rockefeller Plaza, 20th Floor
New York, NY 10111
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------x

| | |
|---|---|
| KUANG YU LIN, individually and on behalf of all others similarly situated, | Case No.: 1:25-cv-6657 |
| Plaintiffs, | **COMPLAINT – CLASS ACTION** |
| v. | |
| TRUST WALLET INC. and DOES 1-10, | |
| Defendants. | |

--------------------------------------------------------------------x

**JURY TRIAL DEMANDED**

Plaintiff KUANG YU LIN (the "Plaintiff"), individually and on behalf of all others similarly situated, by the undersigned attorneys, as and for his Complaint against defendant TRUST WALLET INC. (the "Defendants" or "Trust Wallet"), alleges the following based upon personal knowledge as to himself and his own actions, and as to all other matters, respectfully alleges, upon information and belief, as follows (Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery):

**NATURE OF THE ACTION**

1.      This class action seeks redress in damages and injunctive relief, arising from the deceptive, negligent, and otherwise improper business practice that Defendants engage in with

respect to the reckless design and deployment of its decentralized application browser ("dApp browser"), which enabled widespread cryptocurrency fraud against unsuspecting users.

2. Plaintiff Kuang Yu Lin and other similarly situated individuals were deceived into transferring cryptocurrency assets to a fraudulent investment interface ("tpmtpo.pro") embedded within the Trust Wallet application. Because the scam interface was loaded within the dApp browser, users reasonably believed they were operating within Trust Wallet's secure platform.

3. Trust Wallet's failure to warn, restrict, or vet such embedded third-party sites—combined with advertising claims about security and fraud protection—constitutes a violation of New York General Business Law ("GBL") §§ 349 & 350, common law negligence, breach of implied duty of care, unjust enrichment, and fraudulent misrepresentation.

4. Plaintiff brings this proposed consumer class action on behalf of himself and all other persons nationwide who, during the applicable limitations period up to and including the present (the "Class Period"), utilized Trust Wallet's dApp browser to access third-party platforms and were defrauded of cryptocurrency assets.

5. During the Class Period, Defendant developed, marketed, and distributed the Trust Wallet application, including the dApp browser feature, throughout the United States. Defendant purposefully designed and promoted its platform in a manner that facilitated consumer confusion and enabled fraudulent schemes, through false and misleading advertising regarding the security of the platform and lack of adequate warnings about unvetted third-party dApps.

6. Defendants' actions constitute violations of New York General Business Law § 349 (New York's statute on deceptive acts or practices) and General Business Law § 350 (New York's statute on unlawful false advertising), as well as those similar deceptive and unfair practices and/or consumer protection laws in other states.

7. Defendants violated statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising. These statutes are:

   a. Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*

   b. Alaska Unfair Trade Practices and Consumer Protection Act, Ak Code § 45.50.471, *et seq.;*

   c. Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*

   d. Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*

   e. California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*

   f. Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*

   g. Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.;*

   h. Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*

   i. District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*

   j. Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*

   k. Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*

   l. Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, *et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*

   m. Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*

   n. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 1LCS § 505/1, *et seq.;*

   o. Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*

   p. Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*

   q. Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*

r. Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*

s. Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § §51:1401, *et seq.;*

t. Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq,,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*

u. Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*

v. Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

w. Michigan Consumer Protection Act, § § 445.901, *et seq.;*

x. Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*

y. Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*

z. Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*

aa. Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*

bb. Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*

cc. Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*

dd. New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.;*

ee. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et seq.;*

ff. New Mexico Unfair Practices Act, N.M. Stat. Ann. §§57 12 1, *et seq.;*

gg. New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.;*

hh. North Dakota Consumer Fraud Act, N.D. Cent. Code §§51 15 01, *et seq.;*

ii. North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*

jj. Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*

    *kk.* Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*

    *ll.* Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*

    *mm.* Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*

    *nn.* Rhode Island Unfair Trade Practices And Consumer Protection Act, R.1. Gen. Laws § 6-13.1-1, *et seq.;*

    *oo.* South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*

    *pp.* South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*

    *qq.* Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*

    *rr.* Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.;*

    *ss.* Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*

    *tt.* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*

    *uu.* Virginia Consumer Protection Act, Virginia Code Ann. §§59.1 -196, *et seq.;*

    *vv.* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*

    *ww.* West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6 101, *et seq.;*

    *xx.* Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*

    *yy.* Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

8. Defendant's misconduct is intentional. Defendant has been unjustly enriched as a result of its conduct. Through these unfair and deceptive practices, Defendant has collected substantial revenue from the promotion and operation of its platform that it would not have otherwise earned had users been properly warned of the risks.

**JURISDICTION AND VENUE**

9. The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C § 1331 because it arises under the laws of the United States.

10. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendants, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

11. The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

12. Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000.00 and is between citizens of different states.

13. The Court has personal jurisdiction over Defendants because their Products are advertised, marketed, distributed, and sold throughout New York State; Defendants engaged in the wrongdoing alleged in this Complaint throughout the United States, including in New York State; Defendants are authorized to do business in New York State; and Defendants have sufficient minimum contacts with New York and/or otherwise have intentionally availed themselves of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendants are engaged in substantial and not isolated activity within New York State.

14. Venue is proper in this District pursuant to 28 U.S.C § 1391(a) and (b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and Defendants are subject to personal jurisdiction in this District. Plaintiff resides here, the harm occurred here, and Defendant conducts substantial business in this District.

## PARTIES

15. Plaintiff Kuang Yu Lin is a resident of New York County, New York, who was defrauded through Trust Wallet's embedded dApp browser as described below.

16. Defendant Trust Wallet Inc. is Trust Wallet is a subsidiary corporation owned by Binance, operating out of Wilmington, DE, with headquarters at its principal place of business in San Francisco, CA. Trust Wallet operates a global cryptocurrency wallet app, including the dApp browser at issue here.

## FACTUAL ALLEGATIONS

17. New York General Business Law § 349 (a) (b) states:

(a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful. (b) Whenever the attorney general shall believe from evidence satisfactory to him that any person, firm, corporation or association or agent or employee thereof has engaged in or is about to engage in any of the acts or practices stated to be unlawful he may bring an action in the name and on behalf of the people of the state of New York to enjoin such unlawful acts or practices and to obtain restitution of any moneys or property obtained directly or indirectly by any such unlawful acts or practices. In such action preliminary relief may be granted under article sixty-three of the civil practice law and rules.

18. Trust Wallet advertises itself as a "secure" and "trusted" wallet to manage and trade cryptocurrencies. Its dApp browser enables users to access third-party applications from within the app.

19. Trust Wallet does not warn users that these dApps are unvetted, nor does it employ restrictions or fraud detection tools for known scams. The scam interface at tpmtpo.pro was integrated into Trust Wallet's browser, presented in the app's own interface, and falsely appeared to be a trusted extension of Trust Wallet.

20. Plaintiff Lin was lured through this fraudulent dApp to deposit a total of $171,177 in cryptocurrency, believing it was a legitimate investment interface provided through Trust Wallet.

21. When Plaintiff attempted to withdraw funds, the dApp redirected to a blank shell and all funds were lost. The fraud was not detected or prevented by Trust Wallet's platform.

22. The same scam has affected numerous victims nationwide, exploiting Trust Wallet's failure to implement adequate warnings, controls, or vetting of dApps.

23. Trust Wallet's Terms of Use contain a mandatory Hong Kong arbitration clause, which is procedurally and substantively unconscionable under U.S. consumer protection law.

24. Plaintiff first encountered a currently unknown individual online in or around October 2024.

25. The individual introduced himself to Plaintiff as "Luke Li," which upon information and belief, is a false identity.

26. The two of them immediately moved their relationship to the social media platform WhatsApp, where they began having personal conversations on a near-daily basis.

27. After several months, during which "Luke" successfully established a rapport with Plaintiff, Luke suggested to Plaintiff the idea of making investments into cryptocurrency.

28. Plaintiff was hesitant at first, but Luke suggested the use of Trust Wallet, which was purported to be an absolutely secure cryptocurrency wallet.

29. As advertised on Trust Wallet's landing page, there were supposed to be "proactive alerts for risky transactions" and "added security with encryption."

30. Plaintiff created a Trust Wallet account as per Luke's instructions and began making investments through Trust Wallet, purchasing various cryptocurrency including Bitcoin and Ethereum, among others.

31. Unbeknownst to Plaintiff, Luke took advantage of Trust Wallet's decentralized application browser (dApp browser) to embed a fraudulent investment interface.

32. This embedded interface was designed to look like a legitimate trading platform within the Trust Wallet environment, using Trust Wallet's native design language, branding structure, and transaction system to falsely present itself as part of Trust Wallet's secure infrastructure.

33. Using this embedded interface, Luke persuaded Plaintiff to invest increasing sums of money through Trust Wallet and from there, into Luke's supposed trading platform for investment into a cryptocurrency investment fund that he managed.

34. Between November 2024 and February 2025, Plaintiff invested a total sum of $150,000 into what he believed to be a legitimate investment platform operating through Trust Wallet.

35. During this entire time, Plaintiff did not receive one single notification from Trust Wallet or any of its advertised "proactive alerts" for risky transactions, nor did he receive any notice that despite being on the application, he was being redirected to an outside website unaffiliated with Trust Wallet.

36. To further induce trust, Plaintiff's Trust Wallet account falsely showed his investments growing steadily over time, even including simulated "withdrawal" features.

37. At one point, Plaintiff was taught by Luke how to submit a withdrawal request and received what appeared to be a confirmation that the request was being processed, further convincing him that the investment system was genuine.

38. In February 2025, when Plaintiff attempted to make a full withdrawal using the instructions provided by Luke, he found that he was unable to access any of his funds – instead, he was redirected to a non-functional screen that read only, "Congratulations, the site is created successfully!"

39. Plaintiff eventually discovered that the investment "platform" was in fact an external website – tpmtpo.pro – that had been embedded into Trust Wallet via the dApp browser.

40. This integration created the false impression that Plaintiff was transacting within Trust Wallet itself, when in reality he was interacting with a third-party scam site over which Trust Wallet had exercised no vetting or oversight.

41. Trust Wallet's architecture allowed this scam site to impersonate a legitimate platform, without warning, disclaimer, or authentication, and permitted this functionality on their platform despite the clear and unambiguous safety risks associated, with there furthermore being no reason or purpose for this functionality other than to allow for fraud to take place on the Trust Wallet platform.

42. No funds were recoverable, and Trust Wallet failed to implement or offer any meaningful recourse.

43. As a result, Plaintiff was deceived into transferring his entire investment Portfolio into a fraudulent system as a result of Defendant's negligence.

44. As a result of Defendant's misrepresentations and omissions, Plaintiff and thousands of other users across the United States were deceived into using Trust Wallet's platform to access fraudulent third-party interfaces, resulting in substantial financial losses.

45. Plaintiff and the Class (defined below) have been damaged by Defendant's deceptive and unfair conduct in that they entrusted Trust Wallet as a secure intermediary, transferred cryptocurrency through its platform, and lost assets due to Trust Wallet's failure to warn, monitor, or restrict embedded fraudulent dApps. Plaintiff and the Class would not have used Trust Wallet's services or deposited funds through its platform had they known the truth about the risks embedded in its architecture and falsely advertised protections.

## CLASS ACTION ALLEGATIONS

46. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the "Class"):

> All persons or entities in the United States who made retail purchases of Tazo bottled tea Products from vending machines during the applicable limitations period, and/or such subclasses as the Court may deem appropriate. Excluded from the Class are current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest. Also excluded from the Class is the judicial officer to whom this lawsuit is assigned.

47. The members of the Class are so numerous that joining all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through the appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Other members of the Class may be identified from records maintained by Defendants and may be notified of the pendency of this action by mail or by advertisement, using the form of notice similar to that customarily used in

class actions such as this.

48. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct.

49. Plaintiff will fairly and adequately protect the interests of the members of the Class in that he has no interests antagonistic to those of the other members of the Class. Plaintiff has retained experienced and competent counsel.

50. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the Class to individually seek redress for the wrongful conduct alleged herein. If Class treatment of these claims were not available, Defendants would likely unfairly receive thousands of dollars or more in improper charges.

51. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the common questions of law fact to the Class are:

    a. Whether Defendants labeled, packaged, marketed, advertised, and/or sold the Products to Plaintiff and those similarly situated, using false, misleading, and/or deceptive packaging and labeling;

    b. Whether Defendants' action constitutes violations of 16 C.F.R. 100, *et. seq.;*

    c. Whether Defendants' actions constitute violations of the New York General Business Law § 349;

    d. Whether Defendants' actions constitute violations of the New York General Business Law § 350;

    e. Whether Defendants omitted and/or misrepresented material facts in connection with the labeling, packaging, marketing, advertising, and/or sale of the Products;

    f. Whether Defendants' labeling, packaging, marketing, advertising, and/or selling the Products constituted an unfair, unlawful, or fraudulent practice;

    g. Whether Defendants improperly mischaracterized the sugar content of the Products by their deceptive language on the Products' packaging;

    h. Whether and to what extent injunctive relief should be imposed on Defendants to prevent such conduct in the future;

    i. Whether the members of the Class have sustained damages as a result of Defendants' wrongful conduct;

    j. The appropriate measure of damages and/or other relief;

    k. Whether Defendants have been unjustly enriched by their scheme of using false, misleading, and/or deceptive labeling, packaging, or misrepresentations, and;

    l. Whether Defendants should be enjoined from continuing their unlawful practices.

52. The class is readily definable, and prosecution of this action as a Class action will reduce the possibility of repetitious litigation. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a Class action.

53. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the

potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

54. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

55. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

56. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

57. Defendants' conduct is generally applicable to the Class as a whole and Plaintiff seeks, inter alia, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

58. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59. Plaintiff brings this claim individually and on behalf of the other members of the Class for violations of NY GBL § 349.

60. By the acts and conduct alleged herein, Defendant committed unfair and deceptive acts and practices by falsely advertising and representing Trust Wallet as a secure platform, while embedding and enabling access to unvetted third-party interfaces capable of executing fraud.

61. The practices employed by Defendant—including advertising proactive fraud alerts and secure infrastructure, while failing to screen or disclose the risks of the dApp browser—are unfair, deceptive, and misleading, and constitute violations of consumer protection laws across multiple jurisdictions.

62. These practices also violate New York General Business Law § 349, which prohibits deceptive acts or practices in the conduct of business, by misrepresenting the nature and safety of Trust Wallet's features, including but not limited to its dApp browser.

63. The foregoing deceptive acts and practices were directed at consumers, including Plaintiff and the proposed Class, who relied on Defendant's misrepresentations when using the Trust Wallet platform.

64. Plaintiff and the other Class members suffered losses as a direct result of Defendant's deceptive and unfair trade practices.

65. Specifically, Plaintiff and Class members were induced to download Trust Wallet, transfer funds into the app, and interact with third-party dApps under the false belief that these services were secure and/or affiliated with Trust Wallet. As a result, they lost substantial cryptocurrency investments they otherwise would have safeguarded.

66. Therefore, Plaintiff and the other Class members are entitled to damages in the statutory amount of $50 per violation plus costs and attorneys' fees.

## COUNT II

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350
(UNLAWFUL FALSE ADVERTISING ACT)

67. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

68. Plaintiff brings this claim individually and on behalf of the other members of the Class for violations of NY GBL § 350.

69. As fully alleged above, by advertising, marketing, distributing, and providing access to its cryptocurrency wallet platform and embedded dApp browser, Defendant engaged in and continues to engage in false advertising.

70. Defendant engaged in false advertising by promoting Trust Wallet as a secure, fraud-resistant platform with features such as "proactive alerts for risky transactions" and "added security with encryption," while simultaneously allowing third-party scam websites like tpmtpo.pro to operate seamlessly within its interface, without warning or vetting.

71. The foregoing false advertising acts and omissions were directed at consumers, including Plaintiff and other members of the proposed Class.

72. Plaintiff and other members of the Class suffered loss as a result of Defendant's false advertising. Specifically, they were induced to trust and use Trust Wallet's platform to access and transfer substantial cryptocurrency funds, falsely believing the transactions were secure and vetted.

73. In this regard, Defendant has violated and continues to violate GBL § 350, which prohibits false advertising. As a direct and proximate result of Defendant's violations of GBL § 350, Plaintiff and other members of the Class have suffered damages in an amount to be determined at trial, but not less than the statutory minimum of $500 per violation.

## COUNT III

### NEGLIGENT MISREPRESENTATION
### (All States and the District of Columbia)

74. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

75. Defendants, directly or through their agents and employees, made false representations, concealment, and nondisclosures to Plaintiff and members of the Class.

76. Plaintiff and members of the Class reasonably relied on Defendant's representations that Trust Wallet was a secure platform, equipped with proactive fraud detection and protective infrastructure, and that the transactions conducted through its interface were safe and trustworthy.

77. In making these representations, Defendant failed to disclose material facts — namely, that its dApp browser allowed third parties to embed unvetted and potentially fraudulent interfaces into the Trust Wallet app without oversight, warnings, or accountability. The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

78. Defendant, in making the misrepresentations and omissions and in undertaking the acts alleged above, knew or reasonably should have known that its representations were false or misleading. Defendant made and intended these misrepresentations to induce the reliance of Plaintiff and members of the Class.

79. Plaintiff and members of the Class relied on these false representations in transferring cryptocurrency assets through Trust Wallet and into scam platforms presented within the app. This reliance was justified and reasonably foreseeable, especially given Defendant's

marketing and interface design.

80. As a result of Defendant's wrongful conduct, Plaintiff and members of the Class have suffered, and continue to suffer, substantial economic losses, including the value of the cryptocurrency transferred to fraudulent platforms and any earnings or interest they would have otherwise retained. The full extent of these damages will be proven at trial.

## COUNT IV

## COMMON LAW FRAUD
### (All States and the District of Columbia)

81. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

82. Defendant intentionally made materially false and misleading representations regarding the security, vetting, and oversight features of the Trust Wallet platform, including its dApp browser functionality.

83. Plaintiff and the Class were induced by and relied on Defendant's false and misleading representations, omissions, and interface design, and did not know at the time they used the app that third-party scam platforms could be embedded within the Trust Wallet environment without any vetting, warning, or oversight.

84. Defendant knew or should have known that its marketing and platform design were misleading and that users were being exposed to substantial fraud risks. Nevertheless, Defendant continued to promote and encourage users to download and use Trust Wallet in a manner that fostered these risks, all while claiming industry-standard security features.

85. Plaintiff and the Class have been injured as a result of Defendant's fraudulent conduct, having lost significant sums of cryptocurrency to platforms they believed were safe or endorsed due to Trust Wallet's misleading presentation.

86. Defendant is liable to Plaintiff and the Class for damages sustained as a result of its fraud, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(A)     For an Order certifying the nationwide Class and under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent members of the Class;

(B)     For an Order declaring Defendants' conduct violates the statutes referenced herein;

(C)     For an order finding in favor of Plaintiff and the Class;

(D)     For statutory, compensatory and/or punitive damages in amounts to be determined by the Court and/or jury;

(E)     For prejudgment interest on all amounts awarded;

(F)     For an Order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

(G)     For such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

| | |
|---|---|
| Dated: New York, New York<br>August 12, 2025 | Respectfully submitted,<br><br>*/s/ Jacob Chen*<br>Jacob Chen<br>jchen@dgwllp.com<br>**DGW KRAMER LLP**<br>45 Rockefeller Plaza, 20th Floor,<br>New York, NY 10111 |