ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/9/26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KUANG YU LIN, individually and on behalf of all others similarly situated,

Plaintiffs,

- against -

TRUST WALLET INC., and DOES 1-10,

Defendants.

25 Civ. 6657 (LLS)

OPINION & ORDER

This is a proposed class action suit for deceptive trade practices brought against digital cryptocurrency platform, Trust Wallet, by a user of the platform, Kuang Yu Lin. Defendant Trust Wallet moves to compel arbitration under Section 4 of the Federal Arbitration Act ("FAA"), or in the alternative, dismiss this case under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 19). For the reasons stated below, defendant's motion to compel arbitration is granted. Its motion to dismiss is therefore denied as moot.

**BACKGROUND**

The following facts are taken from plaintiff's complaint (Dkt. No. 1), defendant's memorandum in support of its motion to compel arbitration (Dkt. No. 20), and plaintiff's opposition to that motion (Dkt. No. 23).

**I. The Facts**

This case stems from an online scam carried out by a non-

party, "Luke Li," utilizing defendant's cryptocurrency investment platform. Compl. ¶ 26. Plaintiff met Li online around October 2024 and soon agreed to invest in Li's cryptocurrency fund. Id. ¶¶ 24-33. Between November 2024 and February 2025, at Li's instruction, plaintiff invested a total of $171,177[1] "into what he believed to be a legitimate investment platform operating through Trust Wallet." Id. ¶ 34.

Trust Wallet is an online platform through which users can manage and invest cryptocurrencies. Id. ¶ 18. Trust Wallet uses a decentralized application ("dApp") browser to enable its users to access third-party applications from within its app. Id. Unbeknownst to plaintiff, Li used Trust Wallet's dApp browser to embed an external website that was "designed to look like a legitimate trading platform within the Trust Wallet environment." Id. ¶¶ 31-32, 39. When plaintiff attempted to withdraw his investments in February 2025, he was unable to. Id. ¶ 38. Plaintiff thereafter initiated this action alleging that defendant falsely advertises itself as a secure platform while enabling bad actors' use of its infrastructure to perpetrate fraud. Id. ¶ 60.

---

[1] Reflecting the overall sloppiness of plaintiff's filings, his complaint and opposition each state at different points that he invested $150,000 and $171,177. Compare Compl. ¶ 34 with id. ¶ 20; compare Opp. Mot. Compel at 2 with Lin Decl. ¶ 13 (Dkt. No. 23-6).

## II. The Arbitration Agreement

Defendant's motion to compel arbitration is based on an agreement to arbitrate contained in Trust Wallet's Terms of Service (the "Terms"). In order to create and access a Trust Wallet account, users are required to download Trust Wallet's app. Mem. Mot. Compel at 2. The app's first screen presents two buttons: "Create new wallet" and "I already have a wallet," under which is printed "By tapping any button you agree and consent to our Terms of Service and Privacy Policy." Id. at 3. Trust Wallet's Terms are hyperlinked in this text. Id.

Near the end of Trust Wallet's Terms is an agreement to arbitrate that states in relevant part:

> [Y]ou and Trust Wallet agree that . . . any Claim must be resolved by compulsory, final, and binding individual (not class) arbitration overseen by the Hong Kong International Arbitration Centre ("HKIAC") and in accordance with its prevailing Rules . . . The seat of arbitration is agreed to be Hong Kong. The Tribunal will consist of one (1) arbitrator to be appointed as per the HKIAC Rules. The language for the arbitration will be English. You and Trust Wallet further concur that the arbitrator will solely hold the power to rule on his or her jurisdiction, which includes any objections pertaining to the existence, scope, or validity of the Agreement to Arbitrate, or to the arbitrability of any Claim.

Terms at 17 (Dkt. No. 16, Ex. 1).

## LEGAL STANDARD

Under the FAA, a party to a contract containing an arbitration agreement may petition a district court for an order

compelling arbitration on "a controversy thereafter arising out of such a contract." 9 U.S.C. §§ 2, 4. Where the court finds that the parties agreed to arbitrate the controversy and there are no defects in the agreement's formation or validity, it must enforce the agreement according to its terms. Silver v. Nissan-Infiniti LT, LLC, 724 F. Supp. 3d 217, 222 (S.D.N.Y. 2024).

In deciding a motion to compel arbitration, the court applies a standard similar to that used on summary judgment: it considers all relevant, admissible evidence and draws all reasonable inferences in favor of the non-moving party. Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016).

## DISCUSSION

In determining whether the instant dispute is arbitrable, the Court must first answer the threshold questions of whether the parties created a valid agreement to arbitrate, and if so, whether that agreement delegates the issue of arbitrability to the arbitrator. Davitashvili v Grubhub Inc., 131 F. 4th 109, 115 (2d Cir. 2025).

### I. Agreement to Arbitrate

"The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." Zachman v. Hudson Valley Fed. Credit Union, 49 F.4th 95,

101-02 (2d Cir. 2022).[2] Defendant met this burden by producing the Terms' arbitration provision and evidence that plaintiff had to accept the Terms in order to create his Trust Wallet account. See Silver, 724 F. Supp. 3d at 223. The burden thus "shifts to the [plaintiff] who needs to counter with at least some evidence to substantiate [his] denial that an agreement had been made." Patel v. Fan Duel, Inc., 2026 WL 1256838, at *5 (S.D.N.Y. May 7, 2026) (internal citation omitted). Plaintiff does not argue or offer any evidence that he did not agree to the Terms. Instead, he argues that defense counsel cannot have personal knowledge of whether plaintiff was presented with this version of the Terms in the manner alleged, and therefore her affidavit does not meet defendant's burden. Opp. Mot. Compel at 3-4. Plaintiff's argument is not supported by case law, and absent "at least some evidence" that he did not agree to the Terms, he cannot overcome defendant's prima facie showing. See id. The Court finds that plaintiff agreed to arbitrate with defendant.

## II. Delegation Clause

Having found an agreement to arbitrate exists between the parties, the Court must now determine whether it or the

[2] Defendant's memorandum misattributes this assertion and two others in the same paragraph to Harrington v. Atl. Sounding Co., 602 F.3d 113 (2d Cir. 2010). See Mem. Mot. Compel at 6. Because the propositions of law are correct, the Court does not find it necessary to take any action beyond a strong reprimand of both parties for sloppy filings.

arbitrator should decide questions of the agreement's enforceability. Davitashvili, 131 F. 4th at 117. The Terms' arbitration provision delegates to the arbitrator sole "power to rule on his or her jurisdiction, which includes any objections pertaining to the existence, scope, or validity of the Agreement to Arbitrate, or the arbitrability of any Claim." Terms at 17. Under the FAA, the Court must enforce this delegation clause unless plaintiff successfully demonstrates the clause itself is invalid. Kuehn v. Citibank, N.A., 2012 WL 6057941, at *4 (S.D.N.Y. Dec. 6, 2012).

Plaintiff challenges the Terms' delegation clause on two grounds, both of which are unavailing. First, plaintiff argues that Trust Wallet did not clearly obtain his assent to the delegation clause because it did not clearly obtain his assent to the Terms generally. Opp. Mot. Compel at 17-18. As discussed above, plaintiff agreed to the Terms in their entirety, including the delegation clause.

Second, plaintiff argues that the cost of obtaining an arbitrator's decision on the question of arbitrability would be unconscionably high, and therefore the Court should decide this issue. Whether arbitration costs would be unconscionable is a "case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and

litigation in court, and whether the cost differential is so substantial as to deter the bringing of claims." In re Currency Conversion Fee Antitrust Litig., 265 F. Supp. 2d 385, 411 (S.D.N.Y. 2003). On a challenge to the delegation clause, the Court may only consider evidence regarding the cost of obtaining an arbitrator's decision on arbitrability. See Kuehn, 2012 WL 6057941, at *4.

Plaintiff has not established that the cost of obtaining a decision on arbitrability would be "prohibitively expensive." In re Currency Conversion, 265 F. Supp. 2d at 411. Plaintiff alleges he would face three types of costs in arbitrating this gateway issue: a registration fee of approximately $1,021.94, an administrative fee of approximately $3,450, and an arbitrator's fee for what plaintiff estimates would be five to ten hours of work.[3] Opp. Mot. Compel at 19. Plaintiff cites arbitrator hourly fees of $503 for disputes of this amount but estimates the fee would likely be higher for a New York-based arbitrator. Chen Decl. ¶¶ 28, 33. Plaintiff also argues that because the parties

[3] Plaintiff's opposition and Attorney Chen's affidavit each cite conflicting amounts for the registration and administrative fees. Compare Opp. Mot. Compel at 9 with id. at 19; compare Chen Decl. ¶¶ 18, 21 (Dkt. No. 23-5) with id. ¶ 36. The Court is not inclined to weigh heavily either piece of evidence where an attorney presents conflicting information in his sworn statement to the Court. Nevertheless, for the purpose of this analysis, the Court uses the numbers plaintiff cites in his argument regarding the delegation clause specifically.

are jointly and severally liable for the administrative and arbitrator's fees, he could be liable for the entire cost of arbitration. See Opp. Mot. Compel at 9-10. However, that hypothetical is too remote and just as likely to cut in plaintiff's favor. Thus, assuming an even division of the administrative and arbitrator's fees, an arbitrator's ruling on arbitrability could reasonably be expected to cost plaintiff $4,000 to $6,000.

That amount is not unconscionable in this context. Plaintiff alleges he does not have the disposable funds to pay for arbitration, which he estimates would costs over $161,984,[4] because his "savings were wiped out" by the events alleged and he has "credit card debt in the low five figure range." See Lin Decl. ¶¶ 22-29. But he does allege why he could not afford the much smaller cost of a decision on arbitrability, or support that argument with specifics regarding his earning, expenses, or debt payments. In comparison to plaintiff's $171,177 claim, and without evidence that plaintiff cannot afford it, this cost cannot reasonably be said to deter plaintiff or make it "unfair to defer to an arbitrator" on a question he agreed to arbitrate.

---

[4] For disputes the size of plaintiff's, HKIAC estimates the average cost of arbitration to be $52,019. Yet plaintiff cites this number only once while repeating the much larger figure four times, including in his delegation clause argument. See Opp. Mot. Compel at 1, 4, 7, 19.

Davitashvili, 131 F. 4th at 119.

Thus, because plaintiff has not demonstrated the delegation clause is unenforceable, all other questions regarding the agreement to arbitrate must be submitted to the arbitrator per Trust Wallet's Terms.

**CONCLUSION**

For the foregoing reasons, defendant's motion to compel arbitration is granted. Defendant's motion to dismiss is therefore denied as moot. This case is stayed pending the outcome of arbitration.

So ordered.

Dated: New York, New York
September 9, 2026

Louis L. Stanton
LOUIS L. STANTON
U.S.D.J.